IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANNETTE PRICE, | ) | CASE NO. 1:09 CV 1052 |
| | ) | |
| Plaintiff, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| WARRENSVILLE HEIGHTS CITY | ) | |
| SCHOOLS, *et al.* | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -2-

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -3-
    A.    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -3-
    B.    Price's claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -4-
    C.    The defendants' motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -7-
    D.    Activity subsequent to the motion . . . . . . . . . . . . . . . . . . . . . . . . . .  -9-

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -10-
    B.    Application of standard – the defendants' motion should be granted . .  -13-
        1.    Counts One and Two . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -14-
            a.    Overview – claims and theories of § 1983 liability . . . . .  -14-
            b.    Application of law to the claims . . . . . . . . . . . . . . . . . . .  -16-
                (i)    Liability of the Board . . . . . . . . . . . . . . . . . . . . . .  -17-
                (ii)    Liability of individual defendants . . . . . . . . . . . .  -19-
        2.    Count Three – right to privacy . . . . . . . . . . . . . . . . . . . . . . . . .  -25-
        3.    Counts Four and Five – impermissible Title VII/state law discharge
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -26-
        4.    Counts Six and Seven – impermissible Title VII/state law retaliation
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -32-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -35-

## Introduction

Before me by referral[1] in this employment discrimination matter brought by Annette Price[2] is a motion for summary judgment by defendants the Warrensville Heights City Schools Board of Education, Eastwood school principal Felicia Woods-Wallace, district superintendent Elaine Davis, and district human relations director David Williams.[3] Plaintiff Price has opposed the motion,[4] and the defendants have replied to that opposition.[5]

For the reasons that follow, I will recommend that the defendants' motion be granted. Moreover, because I am recommending that summary judgment be granted on the basis set forth below, all matters raised in Price's previously denied[6] motion for an *in camera* hearing[7] are, on reconsideration, hereby deemed moot.

---

[1] ECF # 81.

[2] ECF # 1 (initial complaint), # 12 (second amended complaint), #16 (third amended complaint).  The final amended complaint was approved for filing by the Court. ECF # 24.

[3] ECF # 55.

[4] ECF # 62.

[5] ECF # 71.

[6] Non-document order of September 29, 2011.

[7] ECF # 77.

# Facts

**A.    Background**

Despite the extensive briefing of the parties, the relevant facts as regards the present motion are simple and straightforward.

At the time of her dismissal in January, 2008, Price was employed by the Board as a para-professional at Eastwood Elementary School.[8] Woods-Wallace, the principal at Eastwood, initiated termination proceedings against Price in November, 2007.[9]  The defendants assert that these procedures resulted from Price's insubordination toward Florence Maye, a kindergarten teacher and Price's supervisor, and from Price's refusal to "cover" a class during a teacher's absence.[10]  Price, in turn, argues that these reasons were merely a pretext, and that the defendants terminated her for being a lesbian and a Pentecostal.[11]

At a pre-termination hearing held at the end of November, 2007, Price was initially shown the records presented as the basis for the insubordination charge.[12]  Notes made at the meeting indicate that the allegations of insubordination were the only grounds for termination

---

[8] ECF # 55 at 4-5 (citing record).

[9] *Id*. at 6 (citing record).

[10] *Id*. at 5-6 (citing record).

[11] ECF # 62 at 1.

[12] ECF # 55 at 6.

discussed at this hearing.[13]   Nor, Price agrees, was her religion or sexuality mentioned.[14]

Another hearing, which union representatives would attend, was set for the end of December

so as to permit Price to review the material and respond.[15]

On December 21, 2007, a second pre-termination hearing was held.[16]   Price attended

and spoke at the hearing.[17]   Again, as at the prior hearing, the parties agree that Price's

religion and sexual orientation were not discussed.[18]

After this second hearing, Williams, the school district's human relations officer,

recommended to the Board Price's termination.[19]   Superintendent Davis concurred in that

recommendation, and the Board then voted to terminate Price on January 31, 2008.[20]

**B.      Price's claims**

Price's third amended complaint makes the following claims:

---

[13] *Id*.

[14] *Id*.

[15] *Id*.

[16] *Id*.

[17] *Id*.

[18] *Id.*

[19] *Id*. at 5-6.

[20] *Id.* at 6.

- Counts One and Two allege that defendants' actions deprived Price of her First Amendment rights to freedom of religion (Count One)[21] and freedom of association (Count Two);[22]

- Count Three alleges that Price's discharge violated her right to privacy;[23]

- Counts Four and Five contend that because the discharge was based on religious discrimination and/or discrimination as to sexual orientation, it violated Title VII of the federal civil rights act,[24] as well as Ohio law.[25]

- Counts Six (state law)[26] and Seven (Title VII)[27] assert that the discharge was retaliation for Price engaging in protected activity;

- Counts Eight and Nine (FMLA claims) have been withdrawn.[28]

As noted, Price essentially claims that the defendants manufactured the insubordination charges as a pretext for her termination.  Price maintains that the defendants actually terminated her in retaliation for her not joining principal Woods-Wallace's church and because the defendants "equated her sexuality, a lesbian, with her religious beliefs –

---

[21] ECF # 16 at ¶¶ 59-63.

[22] *Id.* at ¶¶ 64-68.

[23] *Id.* at ¶¶ 69-73.

[24] *Id.* at ¶¶ 74-81.

[25] *Id.* at ¶¶ 82-85.

[26] *Id.* at ¶¶ 86-91.

[27] *Id.* at ¶¶ 92-94.

[28] ECF # 54.

Pentecostal."[29]  In that regard, Price states first that the defendants violated her Fourteenth Amendment right to privacy when her private, consensual intimate relationship with another woman, also a district employee, was discovered by the defendants[30] and then used as grounds for making false disciplinary charges against her.[31]  She further contends that she suffered religious discrimination in violation of Title VII when she was terminated because her employer equated being a lesbian with being Pentecostal.[32]

In that regard, Price contends that during required meetings with Williams to discuss the complaints against her, Williams would look up Bible verses on his computer and "tell [Price] how to live her life."[33]  Further, Price points to a holiday card she received from Woods-Wallace wherein Woods-Wallace included a hand-written note that Price should "remember as <u>Christians</u> we must walk the walk and talk the talk.  Never misrepresent God."[34]  This card from Woods-Wallace followed an earlier invitation to Price from Woods-Wallace to attend Woods-Wallace's church – the Word.[35]  Although Price accepted

---

[29] ECF # 62 at 8.

[30] ECF # 16  at ¶¶ 29, 32.

[31] ECF # 62 at 14.

[32] *Id.*

[33] ECF # 16  at ¶ 34.

[34] *Id*. at ¶ 36 (emphasis original).

[35] *Id*. at ¶ 30.

-6-

that invitation, she "later decided that she did not want to continue to attend or become a

member of the Word Church."[36]

## C.    The defendants' motion

The defendants' motion for summary judgment rests on five fundamental responses

to Price's claims:

1.    As to the allegations that the termination was retaliation for Price being
      in a consensual intimate relationship with another woman, or that
      Price's right to privacy was violated by the defendants' knowledge of
      Price's sexual orientation, the defendants here maintain that there is no
      evidence that any defendant knew of such a relationship during the time
      Price was being terminated, or even knew that Price was a lesbian.[37]  In
      that regard, the defendants argue that because Price has the burden of
      proving that her privacy was violated, the fact that no defendant knew
      anything about what was purportedly private thereby defeats the
      claim.[38]

2.    As to the claim that Price was discriminated against for her religion, the
      defendants initially assert that neither the Christmas card sent by
      Woods-Wallace, nor, presumably, the presence of Christian scripture
      on Williams' computer during counseling sessions with Price constitute
      blatant, overt evidence of discrimination but rather are merely non-
      actionable circumstantial evidence.[39]  Next, applying the *McDonnell
      Douglas* analysis, the defendants claim that because Price has not
      shown any disparate treatment involving comparable employees, she
      has not made out a discrimination claim in this regard.[40]  Moreover,
      even if such a prima facie case could be made and the burden then
      shifted to the Board to articulate a legitimate, non-discriminatory

---

[36] *Id.* at ¶ 31.

[37] ECF # 55 at 8.

[38] *Id.*

[39] *Id.* at 10-11.

[40] *Id.* at 12.

reason for Price's discharge, the defendants asserts that Price "has presented no evidence that the proffered reason [*i.e.*, insubordination] did not actually motivate the [termination]."[41] In addition, the defendants contend that all the evidence related to the termination is that the only issue discussed in that regard was Price's insubordination.[42]

3.  As regards any claim concerning a denial of Price's "free exercise" right, the defendants note that Price has admitted that no one ever tried to preclude her practice of Pentecostalism.[43] In addition, the defendants note that the preceding analysis of Price's discrimination claim applies to any assertion that her termination was an attempt to prevent Price from freely exercising her right to worship as she chose.[44]

4.  The defendants then assert that Price has not made out a Section 1983 claim that the Board was liable for having a policy or custom that injured her because she has not identified any such policy or custom.[45]

5.  Finally, as to the claim that her termination was in retaliation for her engaging in protected activity, the defendants note that Price has not claimed that she took any public position as regards Pentecostalism.[46] Thus, they argue, if Price never had a public position regarding religion, there is no basis for claiming that her discharge was in retaliation for her exercise of her First Amendment rights.[47]

---

[41] *Id*. at 13.

[42] *Id.*

[43] *Id.*

[44] *Id*. at 14-15.

[45] *Id*. at 15-16.

[46] *Id*. at 18.

[47] *Id*. at 18-20.

**D.     Activity subsequent to the motion**

These arguments were extended in the defendants' reply[48] to Price's response to the

summary judgment motion.[49]  The arguments continued as Price sought to file additional

evidence in support of her claims,[50] and the defendants sought to strike portions of those

additional filings on the grounds that the evidence therein was not admissible.[51]  After this

matter was briefed,[52] the Court determined that portions of Price's first additional submission

would be stricken[53] but that Price would be permitted to file a supplemental affidavit.[54]  The

evidence thus ultimately determined to be admissible here will be evaluated below under the

applicable standards.

Accordingly, inasmuch as the Rule 56 record has been established and the arguments

advanced, the motion for summary judgment is ready for resolution.

---

[48] ECF # 71.

[49] ECF # 62.

[50] ECF # 73.

[51] ECF # 75.

[52] ECF ## 76, 78, 79, and 80.  Also, Price's motion for an *in camera* hearing (ECF # 77) was filed as part of this process.

[53] This order was contained in a non-document entry of January 1, 2011.

[54] This order was contained in a non-document entry of March 17, 2011.

## Analysis

**A.      Standard of review – summary judgment**

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[55]  The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.[56]

A fact is "material" only if its resolution will affect the outcome of the lawsuit.[57] Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.[58] The court will view the summary judgment motion "in the light most favorable to the party opposing the motion."[59]

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.[60]  Accordingly, "[t]he mere existence of

---

[55] Fed. R. Civ. P. 56(c).

[56] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

[57] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[58] *Id.* at 252.

[59] *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[60] *McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 322).

a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[61]  Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.[62]

In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."[63]  However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.[64]

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.[65]  The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."[66]  The text of Fed. R. Civ. P. 56(e) states:

---

[61] *Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004) (quoting *Anderson*, 477 U.S. at 248-49).

[62] *Anderson*, 477 U.S. at 249-50 (citation omitted).

[63] *Id.* at 252.

[64] *March v. Levine*, 249 F.3d 462, 471 (6th Cir. 2001).

[65] *Anderson*, 477 U.S. at 256.

[66] *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

"In other words, the movant can challenge the opposing party to 'put up or shut up' on a critical issue."[67]

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'"[68] Rule 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.[69]

However, the district court may consider evidence not meeting this standard unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

---

[67] *BDT Prods. v. Lexmark Int'l*, 124 F. App'x 329, 331 (6th Cir. 2005).

[68] *Wiley v. United States*, 20 F.3d 222 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).

[69] *Id.* at 225-26 (citations omitted).

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.[70]

As a general matter, the judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law."[71]  The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter.[72]  The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[73]

In sum, proper summary judgment analysis entails:

> the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[74]

## B.    Application of standard – the defendants' motion should be granted

As is apparent from the above statement of issues, Price raises numerous claims that seek relief on multiple bases, all largely related to either her sexuality or her religion.  I will address them sequentially below.

---

[70] *Id.* at 226 (citations omitted).

[71] *Anderson*, 477 U.S. at 248.

[72] *Id.* at 249.

[73] *Id.*

[74] *Id.* at 250.

1.    *Counts One and Two*

a.    *Overview – claims and theories of § 1983 liability*

Price here asserts that, in violation of § 1983, she was denied her right to freely practice her religion (Count One) and her right to free association (Count Two).  The essence of these claims, as stated by Price, is that Davis, as the director of personnel, and Woods-Wallace, as the building principal, effectively established among themselves a policy or custom, that was condoned by the Board, where Price's continued employment was conditioned upon her changing her religion.[75]  She alleges that on the evidence now before the Court "a reasonable jury could conclude that Woods-Wallace's written reasons in disciplining Price were pretextual," and that "a supervisory official [of the Board] at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct" of the subordinates who set in motion the pretextual discharge.[76]

With that understanding of the allegations, as all parties implicitly acknowledge, § 1983 liability against the Board may not be premised on theories of respondeat superior but only on proof that the Board maintained a policy or custom that caused Price's injury.[77]  To that end, Price argues, as stated above, that the Board acted improperly by adopting a

---

[75] ECF # 62 at 23.

[76] *Id.*

[77] *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691-92 (1978).

-14-

"policy" created by Davis and Woods-Wallace that Price would have to change her religion to retain her job.[78]

But, although not argued by the parties, § 1983 liability might also exist against the individual defendants, apart from the Board, if they were the "cause in fact" of Price's termination, even if they were not the "proximate" cause of that event.  In other words, liability could attach if the defendants set in motion the chain of events that they reasonably foresaw would result in Price's termination by the Board.[79]  As the Supreme Court has said, "§ 1983 'should be read against the backdrop of tort liability that makes a man responsible for the natural consequences of his actions.'"[80]

In *Powers v. Hamilton County Public Defender Commission*,[81] the Sixth Circuit stated that if a third party, such as the Board, was the immediate proximate cause of Price's termination and did not terminate her pursuant to any improper custom or policy, the Board

_____

[78] The clear standard is that § 1983 liability for a governmental entity may not be premised on *respondeat superior*, but requires the existence of a governmental "policy or custom" that caused the plaintiff's injury.  *Monell*, 436 U.S. at 691-92.  A single decision of a policy maker may be sufficient to establish the existence of a governmental policy or custom where it can be shown that such an action was taken by the final decision maker with "deliberate indifference to its known or obvious consequences," and that the municipal action was the "moving force" behind the plaintiff's injury.  *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403-06 (1997) (citations omitted).

[79] *Paige v. Coyner*, 614 F.3d 273, 280 (6th Cir. 2010).  In a § 1983 case claiming retaliatory discharge jury could find liability against defendant Coyner, whose phone call set in motion the chain of events resulting in the firing of plaintiff, if jury found that "the firing was a reasonably foreseeable consequence of the action taken by Coyner."

[80] *Malley v. Briggs*, 475 U.S. 335, 345 n.7 (1986).

[81] *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592 (6th Cir. 2007).

would be the proximate cause of the termination, but not be liable under § 1983.  The individual defendants nevertheless would be liable as the cause in fact under § 1983 if it were shown that the Board would not have terminated Price "but for" the initiating act of the individuals and that Price's termination was reasonably foreseeable to the initiating parties.[82]

The individual defendants may still avoid liability under this approach if they can establish that some act or cause intervened between the defendants initiating the chain of events leading to Price's termination and the Board taking action to terminate.  As the Sixth Circuit stated in *Powers*:

> Thus, even if it is foreseeable that the defendant's action will lead to the complained of harm, a defendant may be able to avoid § 1983 liability by pointing to the intervening action of [another] as the proximate cause of the plaintiff's injury.[83]

Such a superceding cause will preclude a finding of liability against the party that initiated even a foreseeable consequence and even though that party's initiating action was "'a substantial factor in bringing about the harm'" to the plaintiff.[84]

*b.*     *Application of law to the claims*

Here, those two theories of liability require two distinct reviews of Price's claims and the Rule 56 evidence.

---

[82] *Id.* at 608-10.

[83] *Id*. at 610.

[84] *Id*. (quoting *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) (citation omitted)).

-16-

(i)     Liability of the Board

First, as concerns the liability of the Board itself, the test is whether there is any evidence that the Board's decision to terminate Price resulted from a custom or practice.  As defendants point out, while the Board clearly terminated Price,[85] there is no evidence that the Board did so with deliberate indifference to Price's free exercise and privacy rights or with any knowledge of a policy or custom created by the individual defendants.  Even assuming arguendo that Price's affidavit establishes that the Board knew of her sexual orientation,[86] there is absolutely no evidence that the Board knew of any "custom" created by the individual defendants[87] to condition future employment on Price changing her religion or to base her termination on any other ground but that of insubordination.[88]

---

[85] ECF # 71 at 15.

[86] *See*, ECF #  The affidavit states that because Price and her lesbian partner attended public board meetings together, therefore, without more, the Board knew or could infer that Price was a lesbian.

[87] To create liability in the Board itself as the wrongdoer for adopting an improper policy or custom that was the moving force behind the termination, Price would need to show either a "policy" evidenced by an "ordinance, regulation or decision officially promulgated" by the Board's officers, *Monell*, 436 U.S. at 690, or a "custom" as shown by a practice that is "so permanent and well-settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691.  As such, a "custom" sufficient to impose § 1983 liability on a governmental entity must be a long-standing usage that "policymaking officials knew about and acquiesced in." *Monell*, 436 U.S. at 690-91.

[88] Price states that the Board's liability lies in the fact that it knowingly condoned or sanctioned the actions of Williams, Davis, and Woods-Wallace to condition Price's "continued employment on changing her religious beliefs."  ECF # 62 at 16.

-17-

In § 1983 cases alleging discharge for improper motive, Price has the initial burden of showing that her exercise of protected rights motivated the Board to take adverse employment action, and then burden shifts to the Board to show that it would have taken the same action absent the improper motive.[89]  Further, where a decision-making board has multiple members, the Sixth Circuit states that a plaintiff establishes board liability for acts taken with an improper "motivation" through a "but for" test; that is, by proving that the entire board would not have acted but for the improper motivation of specified members who participated in the action.[90]

Here, Price contends that a jury question exists as to whether "Davis, Williams and Woods-Wallace pursued an illegal custom or policy regarding conditions of employment." But, questions as to the conduct of these Board *employees* are not germane to the issue Price must prove to establish Board liability – *i.e.*, the  motivation of  Board *members* as to Price's termination.  As noted above, the Board's motive in this instance would be established by examining motives of individual members and then determining if the Board as a whole would have terminated Price "but for" the actions of those members.

In this record there is no evidence of the motivation of any individual board member concerning Price's discharge.  Price cannot, therefore, establish the first element for Board liability under § 1983 – that the Board was motivated to terminate her because of her exercise

---

[89] *Scarborough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 262 (6th Cir. 2007) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

[90] *Scarborough*, 470 F.3d at 262-63.

of First Amendment rights.  Accordingly, I recommend granting summary judgment on Counts One and Two to the Board.

(ii)    Liability of individual defendants

As explained above, § 1983 liability could still attach to Davis, Williams, or Woods-Wallace without the need to show that the Board approved or condoned any improper policy or custom purportedly created by these defendants, or that individual Board members acted with an improper motive. Rather, liability against these employees could be established if:  (1) the Board would not have discharged Price "but for" the actions of these individuals, and that (2) these defendants reasonably foresaw that the Board would act as it did as a result of their discriminatory actions.

As noted earlier, neither side appears to have recognized this standard for determining liability.  As such, the briefs contain no arguments addressing the evidence related to this standard.  Moreover, the problem is compounded in this case by another unbriefed issue: whether Price's religion or sexuality was, at least in part, the motivation for any recommended action taken by Williams, Davis, and Woods-Wallace.[91]

Specifically, where there is a claim under § 1983 that the discharge of a public employee was in retaliation for that employee's exercise of any First Amendment right,[92]

_____

[91] There is some confusion over whether Price is continuing to allege § 1983 claims asserting that the defendants retaliated against her for exercising both her First Amendment free exercise right and her right of association, or whether only the free exercise claim of Count One remains.  In the interest of thoroughness, both claims are addressed here.

[92] As noted by the Sixth Circuit in *Scarborough*, 470 F.3d at 260, because extensive analytic tools already exist for adjudicating First Amendment free speech retaliation claims,

courts apply the same standard as is used in free speech retaliation matters.[93]  As such, the employee must establish the following:  (1) that she engaged in constitutionally protected activity, (2) that an adverse action was taken against her that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) that the adverse action was motivated at least in part by the protected conduct.[94]

In this case, the first inquiry is to determine if Price engaged in any constitutionally protected First Amendment activity.  Price at various points appears to allege that she was exercising three protected rights:  (1) the right to free exercise of her religion, (2) the right to freely associate with whomever she wished in a consensual sexual relationship, and (3) a right to have that relationship be private.[95]

In considering these three possible scenarios, I note first that issues regarding what an employee may reasonably expect to keep private from an employer are customarily grounded in analysis of the Fourth Amendment, not the First Amendment.[96]  Further, in that regard, any interest by Price in keeping her sexual relationship private from the Board was

---

courts in this Circuit will employ that reasoning when considering cases arising under other First Amendment rights, such as freedom of religion and of association.

[93] *Scarborough*, 470 F.3d at 260 (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 390 (6th Cir. 1999) (en banc)).

[94] *Scarborough*, 470 F.3d at 255 (citing *Thaddeus-X*, 175 F.3d at 394)).

[95] *Also see*, Count 3 herein.

[96] *City of Ontario, Cal. v. Quon*, 130 S. Ct. 2619, 2628-29 (2010).

effectively waived by her action in publicly attending Board meetings with her partner.[97]

Drawing the inference from that act that Price seeks to draw, this relationship became public, not private, when Price appeared at multiple public meetings with her partner. As has long been the case, and as the Supreme Court has recognized, there can be little expectation of privacy in that which is voluntarily disclosed to another who has no responsibility to treat the disclosed information as confidential.[98]

Moreover, the very recent decision by the Sixth Circuit in *Lowe v. Swanson*[99] teaches that any claimed right based on *Lawrence v. Texas*[100] to privately engage in sexual conduct free from government intrusion would be grounded in the Due Process Clause of the Fourteenth Amendment, not the First Amendment.[101] But, as *Lowe* also states, it is presently unclear whether *Lawrence* actually created any such fundamental substantive due process right or merely held that Texas did not have a rational basis for its legislation outlawing the particular practice of sodomy.[102]

---

[97] It is tenuous to the point of incredulity to argue that one makes a statement about his or her sexual orientation by merely appearing in public in the company of a person of the same sex. But giving Price the benefit of the doubt once the relationship became public by Price's actions or statements, there is no privacy claim.

[98] *See*, *Couch v. United States*, 409 U.S. 322, 335 (1973).

[99] *Lowe v. Swanson*, 663 F.3d 258 (6th Cir. 2011).

[100] *Lawrence v. Texas*, 539 U.S. 558 (2003).

[101] *Lowe*, 663 F.3d at 262-63.

[102] *Id*. at 263.

-21-

In addition to a claim based on due process, the Sixth Circuit in *Scarborough* has sanctioned the use of equal protection analysis in cases alleging employment discrimination against homosexuals.  While *Scarborough* noted that "homosexuality is not a suspect class in this circuit"[103] such as would merit strict scrutiny for state actions taken against a class member, nonetheless, "a state action taken based on that animus [against homosexuals] alone violates the Equal Protection Clause."[104]

Here, Price has not established the first element of the test for First Amendment retaliation as it might concern her sexual relationship with her partner:  specifically, that in this relationship she was exercising a First Amendment right.  First, as noted, any right in this case would not be a First Amendment right but would potentially be a Fourteenth Amendment right arising under either the Equal Protection Clause (a right, as noted in *Scarborough*, to be treated similarly to all employees regardless of sexual orientation) or the Due Process Clause right arguably created under *Lawrence*.[105]  Further, in light of the Sixth

---

[103] *Scarborough*, 430 F.3d at 261.

[104] *Id.* at 873; *see also*, *Hutchinson v. Cuyahoga County Bd. of Comm'rs*, 2011 WL 1563874, at *7 (N.D. Ohio April 25, 2011) (Although Title VII does not include sexual orientation as a statutorily protected class, "an employee who alleges sexual orientation under § 1983 is not *per se* excluded from establishing an equal protection claim against her employer.").

[105] Price's First Amendment argument seems to be that her relationship with her partner is an "association" protected by the First Amendment.  However, as the Supreme Court observed in *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000), the First Amendment's right of association is implicit in and corresponds to the right to engage in the other First Amendment rights.  *Id.* at 647-48 (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984)).  In other words, the First Amendment right to associate only protects the right to combine for purposes of engaging in "some form of expression, whether public

-22-

Circuit's holding in *Lowe*, Price has not demonstrated that *Lawrence* did create such a right. Finally, as also noted above, to the degree that Price could establish that a Fourth Amendment privacy claim under *Lawrence* was possible in this case, her act of essentially announcing her relationship in public precludes any finding that this right was violated.[106]

Accordingly, Price is left with the claim that she was terminated in retaliation for exercising her First Amendment right to freely practice her religion.  As noted, because there is no proof of the Board's motivation in terminating Price beyond the stated reason of insubordination,[107] Price's claim is restricted to whether the individual defendants have any liability for setting in motion a retaliatory termination based on Price practicing her religion when those defendants reasonably foresaw that the Board would act as it did.

There is no doubt that government employment may not be conditioned upon the surrender of rights protected by the First Amendment.[108]  As the Supreme Court has stated: "Government may neither compel affirmation of a repugnant belief, nor penalize or

---

or private."  *Dale*, 530 U.S. at 648.

[106] I note that these arguments are analytically distinct from whether sexual orientation is a permissible basis for an employment action.  That issue is not applicable in that the sexual orientation claims have been withdrawn.

[107] In particular, as stated earlier, there is no proof in this record as to the motivation of individual Board members from which the Board's motivation as a whole could be determined.

[108] *Weiman v. Updegraff*, 344 U.S. 183, 191-92 (1952).

-23-

discriminate against individuals or groups because they hold religious views abhorrent to the authorities."[109]

Next, the issue is whether the evidence when viewed most favorably to Price shows that the individual defendants were motivated to initiate proceedings for Price's discharge at least in part because Price professed religious beliefs "abhorrent to [these defendants]." At this stage, it is important to keep in mind that Price must merely show that improper motives were only "in part" responsible for these defendants initiating the termination procedure against her. Looking at the evidence under that minimal standard, and in the light most favorable to Price, there is at least a jury question as to whether Woods-Wallace, Williams, and Davis were motivated – even just "in part" – to initiate termination proceedings against Price based on Price's religious views.[110]

But, even if a jury could find that Williams, Woods-Wallace, and Davis had an improper motive concerning Price's religion that was "in part" responsible for them initiating termination proceedings against her, there is no evidence in the record to show: (a) that it was foreseeable to these defendants that such proceedings would result in Price's

---

[109] *Sherbert v. Verner*, 374 U.S. 398, 402 (1963).

[110] As more fully discussed above, that evidence includes:  (1) Price not joining Woods-Wallace's church after being invited; (2) Woods-Wallace's handwritten note to Price on a Christmas card containing phrases like "Never misrepresent God;" and (3) Williams having Bible verses visible on his computer while discussing job performance complaints with Price.  In addition, the record shows that Davis was aware of Woods-Wallace's card and discussed it with Williams (ECF # 62 at 5 n.32).

termination by the Board, and (b) that the Board would not have taken action against Price "but for" their action.

In particular, as to the foreseeability element, there is no evidence showing the frequency with which the Board accepted, modified, or rejected termination recommendations by the staff, such as would permit Price to prove that it was "foreseeable" to these defendants that the Board would terminate Price if they but initiated the process.

Accordingly, because, as discussed, Price cannot on this record make out a § 1983 case against these individual defendants under the *Powers* rubric, I recommend granting all the individual defendants summary judgment as to Counts One and Two.

## 2.    *Count Three – right to privacy*

As discussed above, any claim by Price that the Board violated her right to keep her sexual relationship private is either not supported by the Rule 56 evidence or waived.  As to the first point, the defendants observe that none of the individual defendants knew of Price's sexual orientation.[111]  But I am also aware that Price argues that the existence of her lesbian relationship should be inferred from the fact that she sat with her partner at public meetings of the Board.[112]

Thus, on the current record, the evidence from the defendants that they did not know of Price's sexual orientation is uncontroverted by any direct evidence in the record.  Price argues, nevertheless, that such knowledge should be inferred because she attended several

---

[111] ECF # 55 at 8 (citing record).

[112] ECF # 74 (Price affidavit at ¶ 12).

public meetings with her same-sex partner.  This is a most tenuous inference.  But, should that inference be permitted, Price waived any right to keep that relationship and her sexual orientation private from the individual defendants by appearing with her partner.[113]  As to the Board, no evidence has been presented by Price as to the knowledge of any individual Board member and that the argument by inference leads to the same conclusion of a waiver as with the individual defendants.

Thus, as to Price's claim that her right to privacy in her sexual relationship was violated, and for the reasons stated above and in the earlier section of this Report and Recommendation, I finally recommend that summary judgment be granted to all the defendants as to Count Three.

### 3.  *Counts Four and Five – impermissible Title VII/state law discharge*

Price's claim here is that the defendants discharged her for a pretextual reason, but that in actuality because her employer equated her sexuality with her religion, thus leading to impermissible religious discrimination in the discharge.[114]  Price has stipulated that the Title VII claims here solely involve religious discrimination, not discrimination as to sexual orientation.[115]

---

[113] The defendants argue that proximate seating is "evidence of nothing."  ECF # 71 at 14.

[114] ECF # 62 at 10.

[115] ECF # 52.  The defendants acknowledge this stipulation.  ECF # 71 at 4.

To make out a *prima facie* case of employment discrimination (and thus avoid summary judgment), the plaintiff must first demonstrate that:  (1) she was a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the job; and (4) she was treated differently than similarly situated employees, not members of the protected class.[116]

Once a *prima facie* case has been made, the plaintiff is entitled to a presumption that the defendant discriminated against her, and the defendant must then attempt to overcome that presumption by putting forth a legitimate, non-discriminatory reason for the complained-of treatment.[117]  As the Supreme Court has emphasized, such a legitimate reason put forth by the defendant must be legally sufficient to justify a verdict in its favor.[118]  If the defendant successfully overcomes the presumption of discrimination, the plaintiff then must show that the defendant's stated reason was a pretext for discrimination.[119]  Throughout this burden-shifting approach, the plaintiff continues to bear the burden of proving, by a preponderance of the evidence, that the adverse employment action resulted from unlawful discrimination.[120]

---

[116] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Wright v. Murray Guard Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (citation omitted).

[117] *Id*. at 706-07.

[118] *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

[119] *Id*. at 253.

[120] *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993).

Ohio law mirrors federal law when adjudicating claims of religious discrimination in employment under Ohio Revised Code § 4112.02.[121]

Price cannot make out a *prima facie* case of discrimination because she cannot show that she was replaced by someone outside the protected class.  As unrebutted affidavits from Williams and Woods-Wallace state, Price was not replaced after she was discharged.[122]

But, as an alternative to showing that the plaintiff was replaced by someone outside the class, a plaintiff may show that she was treated differently than other similarly situated employees.[123]  To be similarly situated, the plaintiff and the employees with whom she seeks to compare herself must be similar in "all of the *relevant* aspects[.]"[124]  There is no requirement, however, that the comparable employees be identical to the plaintiff or that there be an exact correlation between all aspects.[125]  Within the disciplinary context, the comparable employees "'must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or

---

[121] *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 196, 421 N.E.2d 128, 131 (1981).

[122] ECF # 55 at 12 (citing Woods-Wallace affidavit and Williams affidavit).

[123] *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008).

[124] *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994) (italics in original)).

[125] *See*, *Jackson v. FedEx Corporate Servs.*, 518 F.3d 388, 396 (6th Cir. 2008).

-28-

mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'"[126]

Price's purported factual support of disparate treatment is:  (1) a declaration by Deena Caine that was ordered stricken by the Court;[127] (2) allegations that two individuals – Stephanie Brown and Takeis Camp – are similarly situated individuals who received disparate treatment;[128] and (3) an allegation that another individual, Frankie Melton, a school security guard, was treated differently when she was suspended for stealing.[129]

As to all three purported comparisons, however, the allegedly similar employees were not similar.  Brown, Camp, and Melton were full-time, non-probationary employees, not probationary like Price, who could be fired at will and was not subject to the collective bargaining agreement.[130]  As is clear in the authority, probationary employees are not similarly situated to full-time employees for purposes of establishing disparate treatment.[131]

---

[126] *Jackson v. Int'l Fiber Corp.*, 395 F. App'x 275, 280-81 (6th Cir. 2010) (quoting *Ercegovich*, 154 F.3d at 352).

[127] Non-document order of January 6, 2011, granting motion to strike the entirety of Deena Caine's declaration.

[128] ECF # 62 (citing Price declaration at ¶¶ 7-12).

[129] ECF # 82 (Price declaration of March 14, 2011).

[130] ECF # 71 (Williams affidavits); *see also*, ECF # 82 (Williams letter to Melton).

[131] *Cameron v. State of Ohio*, 344 F. App'x 115, 117-19 (6th Cir. 2009).

Finally, even if Price could set forth a *prima facie* case of religious discrimination, I recommend finding that she has not established that the stated reason for her discharge was pretextual.

Essentially, once a legitimate, non-discriminatory reason has been articulated by the employer for taking the action in question, the burden shifts to the plaintiff to prove that the stated reason was merely a pretext.[132]  Pretext can be shown either directly by evidence of discriminatory decision making, or indirectly, "by showing that the employer's proffered explanation is unworthy of credence."[133]  Establishing that an explanation is unworthy of belief can be shown, by a preponderance of the evidence, that alternatively:  (1) the proffered non-discriminatory reason had no basis in fact, (2) the proffered reason was not the actual reason, or (3) the proffered reason was insufficient to explain the action.[134]

The third category is often proven by reference to different treatment received by similarly situated employees.[135]  In addition, evidence that shows the business reasonableness

---

[132] *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008).

[133] *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 392-93 (quoting *Texas Dept. of Cmty. Affairs*, 450 U.S. at 256).

[134] *Id.* at 393 (citing *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 545 (6th Cir. 2008)).

[135] *Manzer v. Diamond Shamrock Chem. Co*., 29 F.3d 1078, 1084 (6th Cir. 1994) (overruled on other grounds, *Geiger v. Tower Automotive*, 579 F.3d 614 (6th Cir. 2009)) ("The third showing ... ordinarily[]consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff.").

of the employer's decision is also relevant insofar as it supports the given explanation as not pretextual.[136]  At this summary judgment stage, the question is whether Price has produced enough evidence from which a jury could find that the Board's explanation for her discharge was merely pretextual.[137]

Here, the Board is clear in stating that Price was discharged for insubordination.[138] To that point, the defendants note that the unrebutted evidence in the record establishes that the two hearings conducted on the termination only dealt with complaints of insubordination and that no other topic, such as religion, was addressed – even by Price, who spoke at both hearings.[139]  Further, as the defendants also point out, insubordination "was and is a[] [business] appropriate basis for termination" as it "goes to the root of the employment relationship."[140]  Moreover, as was discussed earlier, Price has offered no evidence of disparate treatment for similarly situated employees that could cast doubt on the proffered reason as pretextual. There exists, therefore, no evidence from which a jury could find that the Board's explanation for the termination was pretextual.

Accordingly, the defendants' motion for summary judgment should be granted as to Counts Four and Five.

---

[136] *Wexler v. White's Fine Furniture*, 317 F.3d 564, 576-77 (6th Cir. 2003) (en banc) (citations omitted).

[137] *White*, 533 F.3d at 394.

[138] *See*, *e.g.*, ECF # 55 at 6.

[139] *Id.* (citing affidavits of Williams, Woods-Wallace, Davis, and Taylor).

[140] ECF # 71 at 11.

**4.      *Counts Six and Seven – impermissible Title VII/state law retaliation***

In *Mulhall v. Ashcroft*,[141] Sixth Circuit reiterated the rule that, to establish a *prima facie* case of Title VII retaliation, a plaintiff must establish four elements:

> (1) plaintiff engaged in an activity protected by Title VII; (2) plaintiff's exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.[142]

The *Mulhall* court further stated that "[s]ummary judgment is proper where the plaintiff fails to present evidence sufficient to create a dispute of material fact with respect to an element of his retaliation claim."[143]

To meet the second element of the rule, the Sixth Circuit is clear that the plaintiff must be able to establish that "the individuals charged with taking the adverse employment action knew of the protected activity."[144]

While, "in most Title VII cases the plaintiff will be able to produce direct evidence that the decision making officials knew of the plaintiff's protected activities,"[145] the lack of such direct evidence is not necessarily fatal if circumstantial evidence can establish this

---

[141] *Mulhall v. Ashcroft*, 287 F.3d 543 (6th Cir. 2002).

[142] *Id.* at 551, quoting *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997).

[143] *Id.*

[144] *Id*. at 552, citing *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 832 (6th Cir. 1999).

[145] *Id.*

element of the claim.[146]  But that circumstantial evidence must be more than the challenged

adverse action itself.[147]  Similarly, it cannot be the mere temporal proximity of the adverse

employment action to the protected activity.[148]  And where "the decision maker denies having

knowledge of the alleged protected activity, the plaintiff must do more than 'offer[] only

conspiratorial theories ... or "flights of fancy, speculations, hunches intuitions or rumors."'"[149]

       In sum, "[w]here a decision-maker accused of retaliation lacked actual knowledge that

the plaintiff employee engaged in Title VII protected activity, then the defendant employer

cannot be held liable for retaliation under Title VII."[150]

       Here, the defendants contend that there is no evidence in the record that Price engaged

in any protected activity.[151]  Price, for her part, argues that she did engage in such activities

when she "voiced her objection to the card, declined to join Woods-Wallace's church and

---

[146] *Id.*, citing *Allen v. Michigan Dep't of Corrs.*, 165 F.3d 405, 413 (6th Cir. 1999).

[147] *Id.* at 553.

[148] *Id.* at 551.  Temporal proximity may, when coupled with other factors, be sufficient to create circumstantial evidence to establish the fourth prong – causality – of the four part test for retaliation (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 567 (6th Cir. 2000)), but does not permit a jury to make any inference as to the second element of the test – that the decision maker "*knew or was aware of [plaintiff's] protected activity.*" (Emphasis in original).

[149] *Proffitt v. Metro. Gov't of Nashville & Davidson County*, 150 F. App'x 439, 443 (6th Cir. 2005), quoting *Mulhall*, 287 F.3d at 552 (quoting *Visser v. Packer Eng'g Assocs.*, 924 F.2d 655, 659 (7th Cir. 1991) (en banc)).

[150] *Seay v. Tennessee Valley Authority*, 340 F. Supp. 2d 832, 841 (E.D. Tenn., 2004), citing *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1156 (11th Cir. 2002); *Mulhall*, 287 F.3d at 551-54; *see also*, *Clark County School Dist. v. Breeden*, 532 U.S. 268, 272-73 (2001).

[151] ECF # 71 at 17.

-33-

refused to end her the (sic) consensual relationship."[152]  As the defendants note, Price testified at her deposition that she never took any public position on Pentacostalism and never mentioned religion or discrimination at the two termination hearings.[153]  As such, the defendants assert that while Price now complains about the card and church invitation, "she did not complain about these matters before her termination."[154]  Price has not shown that any decision maker was aware prior to the discharge that she was engaged in a protected activity and that her exercise of her civil rights was known to such decision makers.  The absence of any comment by Price during the two hearings that would evidence a belief she was being retaliated against for exercising a protected right is significant.  As was detailed above, Price cannot prove a defendant knew she was exercising a protected right by speculation, hunches, or intuition.  Nor can proof be inferred by mere temporal proximity of the discharge to the purported protected act.  To that end, even the letter sent by Price to Williams in the midst of the termination hearings and only a month before the actual termination in January 2008 does not mention retaliation for engaging in a protected activity.[155]

---

[152] ECF # 62 at 18.

[153] ECF # 71 at 17 (citing record).

[154] *Id.*

[155] ECF # 55 (Price affidavit/attachments at 45).  I also note that in these attachments is a detailed three-page letter from Price to a federal hearing officer dated February 28, 2008, or immediately after the termination, which also makes no mention at all about retaliation for engaging in the practice of her religion.

In addition, the defendants also argue that even if Price could establish a *prima facie* case of retaliation, she fails once again to show that the stated reason for her discharge was a pretext.[156]  As discussed above, no jury issue exists as to pretext.

The defendants are entitled to summary judgment as to Counts Six and Seven.[157]

## Conclusion

Upon the applicable law and the Rule 56 record, I recommend that the defendants' motion for summary judgment as to all remaining counts of the complaint be granted for the reasons stated above.

Dated:   May 3, 2012                              s/ William H. Baughman, Jr.
                                                 United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[158]

---

[156] ECF # 55 at 19.

[157] In light of this recommendation, as well as the prior recommendations concerning summary judgment for the defendants, I do not address the defendants' claims for immunity. *See*, ECF # 71 at 17-19.

[158] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-35-