IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
 : CASE NO. 1:09 CV 01052
ANNETTE PRICE, :
 :
                              Plaintiff, :
 :
          -vs- : MEMORANDUM OF OPINION AND
 : ORDER
 :
WARRENSVILLE HEIGHTS CITY :
SCHOOLS, *et al*, :
 :
                              Defendants.
------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

This matter comes before the Court on the plaintiff's objections to the magistrate judge's report and recommendation ("R&R") that the defendants' motion for summary judgment be granted. (Doc. 90). The defendants have filed a response. (Doc. 93). While agreeing with the recommendation to grant the motion, the defendants disagree, in part, with the magistrate judge's reasoning and request that the R&R be adopted with modifications. For the reasons that follow, the R&R will be adopted in part and modified in part. The defendants' motion for summary judgment will be granted.

**I. Background**

This is an employment discrimination case brought by plaintiff Annette Price against defendants the Warrensville Heights City Schools Board of Education ("the

Board"), Eastwood School principal Felicia Woods-Wallace, district superintendent Elaine Davis, and district human relations director David Williams. (Doc. 16-1).

The basic outline of the facts, as set forth in the report and recommendation, is as follows:

> At the time of her dismissal in January, 2008, Price was employed by the Board as a para-professional at Eastwood Elementary School. Woods-Wallace, the principal at Eastwood, initiated termination proceedings against Price in November, 2007. The defendants assert that these procedures resulted from Price's insubordination toward Florence Maye, a kindergarten teacher and Price's supervisor, and from Price's refusal to "cover" a class during a teacher's absence. Price, in turn, argues that these reasons were merely a pretext, and that the defendants terminated her for being a lesbian and a Pentecostal.
>
> At a pre-termination hearing held at the end of November, 2007, Price was initially shown the records presented as the basis for the insubordination charge. Notes made at the meeting indicate that the allegations of insubordination were the only grounds for termination discussed at this hearing. Nor, Price agrees, was her religion or sexuality mentioned. Another hearing, which union representatives would attend, was set for the end of December so as to permit Price to review the material and respond.
>
> On December 21, 2007, a second pre-termination hearing was held. Price attended and spoke at the hearing. Again, as at the prior hearing, the parties agree that Price's religion and sexual orientation were not discussed.
>
> After this second hearing, Williams, the school district's human relations officer, recommended to the Board Price's termination. Superintendent Davis concurred in that recommendation, and the Board then voted to terminate Price on January 31, 2008.
>
> * * *
>
> Price essentially claims that the defendants manufactured the insubordination charges as a pretext for her termination. Price maintains that the defendants actually terminated her in retaliation for her not joining principal Woods-Wallace's church and because the defendants "equated her sexuality, a lesbian, with her religious beliefs – Pentecostal." In that regard, Price states first that the defendants violated her Fourteenth Amendment right to privacy when her private, consensual intimate relationship with another woman, also a district employee, was discovered by the defendants and then used as grounds for making false disciplinary charges against her. She further contends that she suffered religious

> discrimination in violation of Title VII when she was terminated because her employer equated being a lesbian with being Pentecostal.
>
> In that regard, Price contends that during required meetings with Williams to discuss the complaints against her, Williams would look up Bible verses on his computer and "tell [Price] how to live her life." Further, Price points to a holiday card she received from Woods-Wallace wherein Woods-Wallace included a hand-written note that Price should "remember as Christians we must walk the walk and talk the talk. Never misrepresent God." This card from Woods-Wallace followed an earlier invitation to Price from Woods-Wallace to attend Woods-Wallace's church – the Word. Although Price accepted that invitation, she "later decided that she did not want to continue to attend or become a member of the Word Church."

(Report and Recommendation, pp. 3-7).

The plaintiff's third amended complaint sets forth seven counts: (1) that the defendants deprived Ms. Price of her First Amendment right to freedom of religion; (2) that the defendants violated her right to freely associate; (3) that Ms. Price's discharge violated her right to privacy; (4) that her discharge was discriminatory in violation of Title VII of the Civil Rights Act of 1964; (5) that her discharge was discriminatory in violation of the Ohio Revised Code §§ 4112.02, 4112.99; (6) that her discharge was retaliatory in violation of Ohio Revised Code §§ 4112(I), 4112.99; (7) that her discharge was retaliatory in violation of Title VII; and (8),(9) that the defendants violated the Family Medical Leave Act. (Doc. 16-1).

Counts 2,8, and 9 were voluntarily withdrawn by the plaintiff. (Docs. 22, 24, 54). The defendants moved for summary judgment on all remaining counts, the plaintiff filed a brief in opposition, and the defendants replied. (Docs. 55, 62, 71). The motion was referred to United States Magistrate Judge William H. Baughman for report and recommendation. (Doc. 81). The magistrate judge issued an R&R recommending

3

summary judgment for the defendants on all counts. (Doc. 88). The plaintiff filed objections, and the defendants responded. (Doc. 90, 93).

This Court makes "a de novo determination determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

**II. Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. See Muncie Power Prods., Inc. v. United Tech. Auto., Inc., 328 F.3d 870, 873 (6th Cir. 2003) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. Id. (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587(1986)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Muncie, 328 F.3d at 873 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." Hamad, 328 F.3d at 234-35 (quoting Anderson, 477 U.S. at 251-52).

**III. Discussion**

The magistrate judge recommended granting summary judgment in favor of the defendants on all counts. The recommendations as to each individual count and the parties' respective objections are discussed below.

**A. Count 1 - Plaintiff's First Amendment Claims under 42 U.S.C. § 1983**

The magistrate judge interpreted the plaintiff's § 1983 claim as a First Amendment retaliation claim and concluded that because the record was devoid of facts to support it, summary judgment was proper. The Court must reject this interpretation of Count 1, because the parties' briefing on the motion for summary judgment indicates that the § 1983 claim was framed not as a First Amendment retaliation claim but as a claim parallel to the plaintiff's Title VII claims. The defendants indicate as much in their response to the R&R, and the plaintiff agrees, noting that the § 1983 claim was used "as a parallel remedy for her Title VII claims for religious discrimination and, accordingly, the Court should treat the elements of the two causes of action [Counts I and IV] the same."

Because federal notice pleading does not require that the plaintiff allege specific legal theories to sufficiently state a claim, a plaintiff's precise ground for recovery may shift as the suit progresses.[1] In this instance, Count One *could* encompass a First Amendment retaliation claim, as the magistrate judge believed it to, but the parties

---

[1] "The dimensions of a lawsuit are not determined by the pleadings because the pleadings are not a rigid and unchangeable blueprint of the rights of the parties. Recovery may be had on grounds not asserted in the complaint." Harbin v. Assurance Co. of America, 308 F.2d 748, 750 (10th Cir. 1962).

5

rejected this interpretation, by explicitly framing the § 1983 claim as parallel to the plaintiff's Title VII claim.

The Sixth Circuit has recognized that "42 U.S.C. § 1983 and Title VII are largely parallel remedies in employment discrimination suits." Boutros v. Canton Reg'l Transit Auth., 997 F.2d 198, 202 (6th Cir. 1993). When "§ 1983 is used as a parallel remedy with title VII in a discrimination suit, the elements of the substantive cause of action are the same under both statutes." Rivera v. City of Wichita Falls, 665 F.2d 531, 534 n. 4 (5th Cir.1982). Therefore, in light of the parties' agreement as to the nature of the § 1983 claim, that claim and the Title VII claim are subject to an identical analysis. As discussed below, the magistrate judge correctly analyzed the plaintiff's Title VII claims and recommended summary judgment. That analysis applies equally to the plaintiff's § 1983 claims. Insofar as the R&R analyzes the § 1983 claim as a distinct First Amendment retaliation claim, its reasoning is not accepted.

### B. Count 2 - Freedom of Association

The magistrate judge recommended summary judgment on plaintiff's count 2, but, as the parties point out, this claim was voluntarily dismissed by the plaintiff. The Court accordingly declines to adopt the magistrate judge's analysis and conclusion relating to this count.

### C. Count 3 - Right to Privacy

Ms. Price alleges that her constitutional right to privacy, as it relates to her sexual orientation, was violated when the defendants terminated her employment. The magistrate judge recommended summary judgment, because the plaintiff produced no

evidence that her sexual orientation was ever an issue during her employment. Indeed, unrefuted record evidence indicates that none of the defendants knew of the plaintiff's sexual orientation until this lawsuit was filed. The plaintiff has not objected to the magistrate judge's conclusion. Therefore, the magistrate judge's recommendation as to Count 3, being correct, will be adopted.

**D. Counts 4 & 5 - Title VII/State Law Discharge**

The magistrate judge advised granting summary judgment on Ms. Price's claim that she was terminated on account of her religion in violation of Title VII.[2] A district court analyzes a Title VII employment discrimination claim under the McDonnell Douglas framework. See McDonnell Douglas Corp. V. Green, 411 U.S. 792 (173). Under this rubric, the plaintiff employee must first establish a *prima facie* case of discrimination by demonstrating that (1) she was a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the job; and (4) was replaced by a person outside of the protected class or was treated differently from similarly situated members of the unprotected class. See Warfield v. Lebanon Corr. Inst., 181 F.3d 723, 728–29 (6th Cir.1999).

If the plaintiff succeeds in making a *prima facie* claim, it creates a rebuttable presumption of discrimination. Carter v. Univ. of Toledo, 349 F.3d 269, 273 (6th Cir.

---

[2]Because "the federal case law interpreting Title VII of the Civil Rights Act of 1964 . . . is applicable to cases involving alleged violations of R.C. Chapter 4112," the analysis relating to Ms. Price's Title VII claims applies to her state law discrimination and retaliation claims. See Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n, 66 Ohio St. 2d 192, 196, 421 N.E.2d 128, 131 (1981); see also Mitchell v. Toledo Hospital, 964 F.2d 577, 582 (6th Cir.1992) (claims of discrimination brought pursuant to the Ohio Civil Rights Act are subject to the same evidentiary standards as Title VII claims).

7

2003). The burden then shifts to the defendant employer to articulate a legitimate non-discriminatory reason for taking the challenged employment action. Id. If the employer meets its burden, only then does the burden shift back to the plaintiff to "prove that the proffered reason was actually a pretext to hide unlawful discrimination." Id.

In this instance, the magistrate judge concluded that Ms. Price failed to make out a *prima facie* case, because she was unable to show that she was replaced by someone outside the protected class. Unrefuted affidavits indicate that Ms. Price was not replaced following her discharge. Further, the magistrate judge concluded that the plaintiff was unable to show that she was treated differently than other similarly situated employees, because her alleged "comparables" were all full-time, non-probationary employees, unlike Ms. Price, who was an at-will, probationary employee.

The magistrate judge further concluded that even if Ms. Price had made out a *prima facie* case, she provided no evidence that the defendant's explanation for her discharge was pretextual. The defendants cited record evidence showing that Ms. Price was fired for insubordination. (See Docs. 55-8, 55-9, 55-11, 55-12). "[E]mployee insubordination is ordinarily a legitimate non-discriminatory reason for adverse action." Kempcke v. Monsanto Co., 132 F.3d 442, 446 (8th Cir. 1998).

To prove her insubordination was a pretext, Ms. Price must demonstrate that (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate her discharge, or (3) that they were insufficient to motivate discharge. Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994) (overruled on other grounds). The magistrate judge concluded that Ms. Price supplied no evidence that would satisfy any of these criteria.

8

Ms. Price objects to these conclusions. First, she maintains that the magistrate judge erred by concluding that she failed to make out a *prima facie* case of discrimination. Without challenging the magistrate judge's reasoning or reading of the facts, Ms. Price asks that the Court use its "equitable powers and loosen the factors on comparator employees so as to not permit an injustice." This objection is overruled, because this Court may not relax binding precedent in the manner requested by the plaintiff. Therefore, the magistrate judge's analysis and recommendation that Ms. Price failed to make a *prima facie* case of discrimination, being correct, will be adopted.

Ms. Price also objects on the ground that the magistrate judge failed to consider pertinent evidence in concluding that she failed to demonstrate pretext. She references a letter from the Director of Special Education Donna Kolb to defendant David Williams ("Kolb letter"), expressing her displeasure with Ms. Price's work performance. The Kolb letter describes an incident in which Ms Price refused to perform her assigned task of assisting a paraplegic student. Ms. Price maintains the letter is a "fabrication" and takes particular issue with its assertion that "Ms. Price did something to irritate the principal and he [Donald Jolly] was not pleased with her negative and demanding position on her assignment." Ms. Price states that Ms. Kolb's statement is contradicted by Donald Jolly's deposition testimony denying that he had any interaction with Ms. Price on the day in question. Ms. Price maintains that this letter "smacks of pretext, and should be disbelieved." (Doc. 90, p. 6).

This objection assumes of course that Ms. Price made a *prima facie* case of discrimination. As explained above, it is the view of the magistrate judge and this Court that she has not done so. Nonetheless, assuming *in arguendo* that she did, her second

9

objection has no merit. Even if a jury were to disbelieve Ms. Kolb's statement, it would lend no credence to Ms. Price's arguments that her discharge for insubordination was without basis in fact or that her insubordination did not actually motivate her discharge. To demonstrate that the proffered reason has no basis in fact, she must provide evidence that the reason is "factually false." See Manzer 29 F.3d at 1084. Ms. Price's objection presents no challenge to the fact of her insubordination. Without characterizing it as such, Ms. Price has repeatedly admitted to being insubordinate while employed by the defendants: on her first day of work at the high school, she refused to assist a paraplegic student who needed one-on-one assistance; and she twice refused to cover a class for an absent teacher. (Price Depo, Doc. 55-18, pp. 8, 9-10)

Because Ms. Price offers no meaningful challenge to the fact of her insubordination, her success on the issue of pretext depends on demonstrating that her insubordination did not actually motivate her discharge. Id. Ms. Price must show that "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994). The Kolb letter states that "Ms. Price did something to irritate the principal and he [Donald Jolly] was not pleased with her negative and demanding position on her assignment." Ms. Price seems to suggest that because Mr. Jolly's deposition testimony contradicts this assertion, Ms. Kolb was not telling the truth. The implication seems to be that Ms. Kolb's alleged untruth was meant to cover-up the true reason for her discharge, religious discrimination.

10

In the Court's view, this apparent discrepancy does not bear on the question of pretext. Although it is possible that the challenged statement is untrue, this putative untruth does not "tend to prove that an illegal motivation was more likely than that offered by the defendant." Manzer, 29 F.3d at 1084.  Even if a jury were to conclude that Ms. Kolb fabricated the assertion that the principal was irritated and displeased with Ms. Price's performance, it could not reasonably conclude, on that basis, that she was terminated because of her religious beliefs. Nor could it reasonably conclude that Ms. Price was terminated for reasons other than those proffered by the defendants. During her deposition, Ms. Price plainly admitted, consistent with the central complaint of the Kolb letter, that she refused to perform her work as assigned. The Kolb letter is not evidence of pretext.

The plaintiff's objections to the magistrate judge's recommendation as to Counts 4 & 5 are overruled. The recommendation will be adopted. As discussed above, because Ms. Price alleged her claims under 42 U.S.C. § 1983 in parallel to her Title VII claims, the above discussion applies with equal force to Count 1 of the Third Amended Complaint.

### E. Counts 6 & 7 - Title VII/State Law Retaliation

The magistrate judge recommended summary judgment on Ms. Price's retaliation claims, because she did not make a *prima facie* case. A plaintiff establishes a *prima facie* case for Title VII retaliation, by showing:

> (1) plaintiff engaged in an activity protected by Title VII; (2) plaintiff's exercise of her civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.

11

Mulhall v. Ashcroft, 287 F.3d 543, 551 (6th Cir. 2002).

The plaintiff argues that she engaged in a protected activity when she "voiced her objection to [the holiday card given to her by Ms. Woods-Wallace], declined to join Ms. Woods-Wallace's church and refused to end her the (sic) consensual relationship." She maintains that the defendants terminated her employment in response to these acts. The magistrate judge recommended rejecting this argument because Ms. Price failed to show that her alleged protected activity was known to anyone with authority to discharge her. Ms. Price offers no meaningful objection to this conclusion but simply advances the same argument already rejected by the magistrate judge. Upon *de novo* review of the record evidence, the Court agrees with the magistrate judge that Ms. Price has failed to make a *prima facie* case of retaliation, noting in addition that Ms. Price provides no evidence of a causal connection between the alleged protected activity and the adverse employment action.

### F. School Board Liability under § 1983

One final issue remains in relation to the Board's potential liability under § 1983. The magistrate judge addressed the Board's § 1983 liability apart from that of the individual defendants, noting that "§ 1983 liability against the Board may not be premised on theories of respondent superior but only on proof that the Board maintained a policy or custom that caused Price's injury." (R&R, p. 14 (citing Monell v. Dept. Of Soc. Servs., 436 U.S. 658, 691-92 (1978)). The magistrate judge recommended a finding that Ms. Price produced no such proof. (Doc. 88, p. 17).

Ms. Price does not object, and the Court agrees with the conclusion, but this point requires a bit of clarification, because the magistrate judge's recommendation was grounded on the understanding that Ms. Price's § 1983 claim was a First Amendment retaliation claim. As discussed above, the parties agreed that the § 1983 claim was a claim parallel to her Title VII claims. Therefore, the magistrate judge's reasoning on this point is rejected insofar as it was assumed that the Board's liability was premised on a claim of First Amendment retaliation. Adopted, however, is the magistrate judge's conclusion that Ms. Price produced no evidence of a Board custom or policy that caused her injury, with the caveat that the injury at issue is the same one alleged under Title VII. In addition, the Court adopts the magistrate judge's conclusion "that there was no evidence that the Board was otherwise motivated to terminate her on any [ ] ground but that of insubordination." (Doc. 88, p. 17).

**IV. Conclusion**

For the reasons stated above, the magistrate judge's R&R is adopted in part and modified in part. The defendants' motion for summary judgment is granted.

IT IS SO ORDERED.

      /s/ Lesley Wells
    UNITED STATES DISTRICT JUDGE

Date:  29 March 2013